## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF WISCONSIN
## MILWAUKEE DIVISION

| | | |
|---|---|---|
| JOSEFA RODRIGUEZ, Individually and on Behalf of All Others Similarly Situated, | ) ) ) | Case No.: 18-cv-1725 |
| | ) | **CLASS ACTION COMPLAINT** |
| Plaintiffs, | ) ) | |
| v. | ) ) | |
| | ) | **Jury Trial Demanded** |
| ALLTRAN FINANCIAL LP, | ) ) | |
| Defendant. | ) ) | |

## INTRODUCTION

1.      This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*. (the "FDCPA") and the Wisconsin Consumer Act, Chs. 421-427, Wis. Stats. (the "WCA").

## JURISDICTION

2.      The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.      Plaintiff Josefa Rodriguez (a.k.a. Josie Rodriguez) is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.      Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from Plaintiff a debt allegedly incurred for personal, family, or household purposes.

5.      Plaintiff is also a "customer" as defined in the Wisconsin Consumer Act, Wis. Stat. § 421.301(17), in that the alleged debt allegedly arose from consumer transaction that included agreements to defer payment, namely a consumer credit card.

6.     Defendant Alltran Financial LP ("Alltran") is a foreign limited partnership with its principal offices located at 5800 North Course Drive, Houston, Texas 77072.

7.     Alltran is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

8.     Alltran is engaged in the business of collecting debts owed to others and incurred for personal, family, or household purposes.

9.     Alltran is a debt collector as defined in 15 U.S.C. § 1692a and Wis. Stat. § 427.103(3).

## FACTS

### *April 20, 2018 and May 21, 2018 Citibank Account Statements*

10.     On or about April 20, 2018, Home Depot Card Services mailed an account statement to Plaintiff regarding an alleged debt owed to "Citibank, N.A." ("Citibank") and associated with Plaintiff's "The Home Depot Consumer Credit Card" account ending in 5932. A copy of this account statement is attached to this Complaint as Exhibit A.

11.     Upon information and belief, the alleged debt referenced in Exhibit A was incurred for personal, family, or household purposes, including purchases of household goods at Home Depot stores.

12.     Exhibit A states that, as of April 20, 2018, the "New Balance" of the account was $1,024.41, and that the "Minimum Payment Due" was $297.00, with a "Payment Due Date" of May 17, 2018.

13.     On or about May 21, 2018, Home Depot Card Services mailed an account statement to Plaintiff regarding an alleged debt owed to "Citibank, N.A." ("Citibank") and

associated with Plaintiff's "The Home Depot Consumer Credit Card" account ending in 5932. A copy of this account statement is attached to this Complaint as Exhibit B.

14.　　Upon information and belief, the alleged debt referenced in Exhibit B was the same alleged debt referenced in Exhibit A.

15.　　Exhibit B states that, as of May 21, 2018, the "New Balance" of the account was $1,079.71, and that the "Minimum Payment Due" was $364.00, with a "Payment Due Date" of June 17, 2018.

### *Alltran's June 1, 2018 Letter*

16.　　On or about June 1, 2018, Alltran mailed a debt collection letter to Plaintiff regarding an alleged debt owed to Citibank and associated with Plaintiff's "The Home Depot" account ending in 5932. A copy of this letter is attached to this Complaint as Exhibit C.

17.　　Upon information and belief, the alleged debt referenced in Exhibit C was the same alleged debt referenced in Exhibits A & B.

18.　　Upon information and belief, Exhibit C is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

19.　　Upon information and belief, Exhibit C is a form debt collection letter used by Alltran to attempt to collect alleged debts.

20.　　The header in Exhibit C contains the following:

```
Creditor: Citibank, N.A.
          THE HOME DEPOT
Account: XXXXXXXXXXXX5932
Alltran ID: ███8174
Total Balance as of June 1, 2018: $1,079.71
Partial Account Number for Your Security
```

Exhibit C.

3

21. <u>Exhibit C</u> also contains the following:

> Our client, the above named creditor, has agreed to accept $539.86 as a settlement for monies owing on your account. Payment must be received by this office within 15 days of the date of this letter to accept this offer. Please make your payment payable to Citibank, N.A.. We are not obligated to renew this offer.

<u>Exhibit C</u>.

22. <u>Exhibit C</u> states that the "Total Balance as of June 1, 2018" is $1,079.71, and offers to settle the account for a single payment in the amount of $539.86.

23. <u>Exhibit C</u> makes no reference to any minimum payment.

24. On a credit card account, the amount "due" and the amount "owing" are different concepts. *See Machnik v. RSI Enters.*, 2017 U.S. Dist. LEXIS 160772, at *6 (E.D. Wis. Sept. 29, 2017) ("In the context of a debt, "owing" an amount is distinguishable from the amount "due." For example, a debtor might "owe" a certain amount on a loan, but only a portion of that amount will be "due" at a particular time.").

25. Alltran misstated the amount of the debt that was actually "due" at the time it sent <u>Exhibit C</u> to Plaintiff. Upon information and belief, only the $364.00 minimum payment was due or past due on June 1, 2018.

26. The unsophisticated consumer receiving <u>Exhibits A-C</u> would be confused and misled about whether she could still make a minimum payment on the account to return it to a current status.

27. The unsophisticated consumer would understand a debt collection letter that states a "total balance" without specifying that portions of that balance "might not yet be due, let alone overdue" to mean that the balance of the account had been accelerated. *See, e.g., Chuway v. Nat'l Action Fin. Servs.*, 362, F.3d 944, 948 (7th Cir. 2004); *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 841 (7th Cir. 2007).

4

28.     Upon information and belief, at the time Exhibit C was mailed, Plaintiff could still return her account to a current status by making a minimum payment.

29.     Exhibit C represents to the unsophisticated consumer that the account has been accelerated, and fails to state that Plaintiff could make a minimum payment.

30.     Exhibit C was mailed prior to the "Payment Due Date" stated in Exhibit B.  Upon information and belief, the representations that the account has been accelerated and Plaintiff cannot return the account to a current status by minimum payment are false.

### *Alltran's June 18, 2018 Letter*

31.     On or about June 18, 2018, Alltran mailed a debt collection letter to Plaintiff regarding an alleged debt owed to Citibank and associated with Plaintiff's "The Home Depot" account ending in 5932.  A copy of this letter is attached to this Complaint as Exhibit D.

32.     Upon information and belief, the alleged debt referenced in Exhibit D was the same alleged debt referenced in Exhibits A-C.

33.     Upon information and belief, Exhibit D is a form letter, generated by computer, and with the information specific to Plaintiff inserted by computer.

34.     Upon information and belief, Exhibit D is a form debt collection letter used by Alltran to attempt to collect alleged debts.

35.     The header in Exhibit D contains the following:

```
Creditor:  Citibank, N.A.
           THE HOME DEPOT
Account:   XXXXXXXXXXXXX5932
Alltran ID:    ████8174
Total Balance as of June 18, 2018: $1,079.71
Partial Account Number for Your Security
```

Exhibit D.

36.     Exhibit D also contains the following:

Citibank, N.A. has agreed to accept $539.86 as a settlement for monies owing on your account payable in 3 equal payments of $179.95 due every 30 days.  Once all 3 payments of $179.95 each have been paid to our office on time, we will consider this account to be settled for less than the full balance owed. Please make your payment payable to Citibank, N.A..

Exhibit D.

37.     Exhibit D states that the "Total Balance as of June 18, 2018" is $1,079.71, and offers to settle the account for "3 equal payments of $179.95 due every 30 days."

38.     Exhibit D makes no reference to any minimum payment.

39.     Alltran misstated the amount of the debt that was actually "due" at the time it sent Exhibit D to Plaintiff. Upon information and belief, only the minimum payment was due or past due on June 1, 2018, but the unsophisticated consumer would not know that this is the case. *See Machnik*, 2017 U.S. Dist. LEXIS 160772, at *6.

40.     The unsophisticated consumer receiving Exhibits A-D would be confused and misled about whether she could still make a minimum payment on the account to return it to a current status.

41.     Upon information and belief, at the time Exhibit D was mailed, Plaintiff could still return her account to a current status by making a minimum payment.

42.     Exhibit D represents to the unsophisticated consumer that the account has been accelerated, and fails to state that Plaintiff could make a minimum payment.  Upon information and belief, the representations that the account has been accelerated and Plaintiff cannot return the account to a current status by minimum payment are false.

43.     Moreover, even if the account had been accelerated as of the date of Exhibit D, Exhibit D further states that "your account continues to accrue interest and may accrue late and other charges on all owed balances pursuant to your agreement with your creditor[.]"

6

44.     The representation that the account may accrue late charges is inconsistent with the representation that the account has been accelerated. *Rizzo*, 351 F.3d 791 at 793; *Rodriguez*, 2018 U.S. Dist. LEXIS 54898, at *12.

45.     A false statement that a debt may be accruing late fees where such fees cannot accrue as a matter of law is materially misleading to the unsophisticated consumer, even if the account is accruing interest and the statement is couched in conditional language. *Boucher v. Fin. Sys. of Green Bay*, 880 F.3d 362, 367-68 (7th Cir. 2018).

46.     Moreover, the body in <u>Exhibit D</u> also states the following settlement conditions:

Your first payment must be received within 15 days of the date of this letter. Consecutive payments are to be made at a minimum of once every 30 days until the settlement amount is paid. This offer is only valid if the payment schedule is met. If the payment schedule is not met, we are not obligated to renew this offer. If the settlement is cancelled any payments already received will be credited towards the full balance.

<u>Exhibit D</u>.

47.     <u>Exhibit D</u> also contains the following payment remittance coupons:



<u>Exhibit D</u>.

48.     The settlement conditions in the body in <u>Exhibit D</u> are plainly inconsistent with the settlement conditions in the payment remittance coupons in <u>Exhibit D</u>.

49.     The settlement conditions in the body in <u>Exhibit D</u> require the consumer to tender her first payment by July 3, 2018 (*i.e.,* within 15 days of June 18, 2018), but the coupon for Payment 1 states that the first payment is due on July 1, 2018. The unsophisticated consumer

7

would have no way to know when the first payment is actually due, and would not know whether the settlement would be "cancelled" if her first payment was received on July 2 or July 3.

50. The settlement conditions in the body in Exhibit D require the consumer to tender subsequent payments within thirty days of each prior payment, but the coupons for Payments 2 and 3 state that these payments are due on July 31, 2018 and August 30, 2018, respectively. Exhibit D is confusing and misleading as to the actual payment due dates for Payments 2 and 3 in cases where the consumer tenders her first or second payments early.

51. Exhibit D contains plainly contradictory settlement conditions.

52. Exhibit D does not state the material terms of the settlement in a non-confusing manner. *Pantoja*, 852 F.3d at 686-87); *Winiecki v. Creditors Interchange Receivable Mgmt., LLC*, 14 F. Supp. 1086, 1093 (N.D. Ill. Jan. 27, 2014) ("It is not enough for a collection letter to state the elements required by the FDCPA; it must state the terms of the settlement offer 'clearly enough that [an unsophisticated consumer] is likely to understand it.'") (quoting *Chuway*, 362 F.3d at 948); *Nichols v. Northland Groups, Inc.*, 2006 U.S. Dist. LEXIS 15037, at *19 (N.D. Ill. Mar. 31, 2006) (collection letter was confusing and misleading because it stated a settlement amount of $4,374.54, but also stated that interest was accruing on the debt and that the consumer could call the debt collector for payment amount for the settlement); *Smith v. Nat'l Enter. Sys., Inc.*, 2017 U.S. Dist. LEXIS 47701, at *13-15 (W.D. Okla. Mar. 30, 2017) ("Any consumer receiving the first letter would be left to wonder about a material term of the offer, that is, the deadline for acceptance."); *see also, Dorrance v. ARS Nat'l Servs.*, 2015 U.S. Dist. LEXIS 61087, at *3 (M.D. Penn. May 11, 2015) (granting final approval in class action settlement including claim that "the defendant sent letters which contained different settlement proposals and that [the plaintiff] was confused by these proposals.").

8

53. The above terms also require the consumer to tender subsequent payments within thirty days of each prior payment.

### *June 20, 2018 Citibank Account Statement*

54. On or about June 20, 2018, Home Depot Card Services mailed an account statement to Plaintiff regarding an alleged debt owed to "Citibank, N.A." ("Citibank") and associated with Plaintiff's "The Home Depot Consumer Credit Card" account ending in 5932. A copy of this account statement is attached to this Complaint as Exhibit E.

55. Upon information and belief, the alleged debt referenced in Exhibit E was the same alleged debt referenced in Exhibits A-D.

56. Exhibit E states that, as of June 20, 2018, the "New Balance" of the account was $1,135.38, and that the "Minimum Payment Due" was $432.00, with a "Payment Due Date" of July 17, 2018.

57. Alltran's representations in Exhibits C and D that the debt had been accelerated are inconsistent with the creditor's representation in Exhibit E that the debt had not yet been accelerated, and the consumer could return the account to a current status by tendering a minimum payment.

58. Plaintiff was confused and misled by Exhibits A-E.

59. The unsophisticated consumer would be confused by Exhibits A-E.

60. Plaintiff had to spend time and money investigating Exhibits A-E, and the consequences of any potential responses to Exhibits A-E.

### *The FDCPA*

61. The FDCPA states that its purpose, in part, is "to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692(e). It is designed to protect

9

consumers from unscrupulous collectors, whether or not there is a valid debt. *Mace v. Van Ru Credit Corp.,* 109 F.3d 338 (7th Cir. 1997); *Baker v. G.C. Services Corp.,* 677 F.2d 775, 777 (9th Cir. 1982); *McCartney v. First City Bank,* 970 F.2d 45, 47 (5th Cir. 1992). The FDCPA broadly prohibits unfair or unconscionable collection methods; conduct which harasses, oppresses or abuses any debtor; and any false, deceptive or misleading statements in connection with the collection of a debt; it also requires debt collectors to give debtors certain information. 15 U.S.C. §§ 1692d, 1692e, 1692f and 1692g.

62.     The Seventh Circuit has held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of an "unsophisticated consumer." *Avila v. Rubin,* 84 F.3d 222, 227 (7th Cir. 1996); *Gammon v. GC Services, LP,* 27 F.3d 1254, 1257 (7th Cir. 1994). The standard is an objective one—whether the plaintiffs or any class members were misled is not an element of a cause of action. *Bartlett v. Heibl,* 128 F.3d 497, 499 (7th Cir. 1997). "The question is not whether these plaintiffs were deceived or misled, but rather whether an unsophisticated consumer would have been misled." *Beattie v. D.M. Collections Inc.,* 754 F. Supp. 383, 392 (D. Del. 1991).

63.     Because it is part of the Consumer Credit Protection Act, 15 U.S.C. §§ 1601 *et seq.*, the FDCPA should be liberally construed in favor of the consumer to effectuate its purposes. *Cirkot v. Diversified Fin. Services, Inc.,* 839 F. Supp. 941, 944 (D. Conn. 1993).

> The [Consumer Credit Protection] Act is remedial in nature, designed to remedy what Congressional hearings revealed to be unscrupulous and predatory creditor practices throughout the nation. Since the statute is remedial in nature, its terms must be construed in liberal fashion if the underlying Congressional purpose is to be effectuated.

*N.C. Freed Co. v. Board of Governors,* 473 F.2d 1210, 1214 (2d Cir. 1973).

10

64.     Statutory damages are recoverable for violations, whether or not the consumer proves actual damages. *Baker,* 677 F.2d at 780-1; *Woolfolk v. Van Ru Credit Corp.,* 783 F. Supp. 724, 727 and n. 3 (D. Conn. 1990); *Riveria v. MAB Collections, Inc.,* 682 F. Supp. 174, 177 (W.D.N.Y. 1988); *Kuhn v. Account Control Tech.*, 865 F. Supp. 1443, 1450 (D. Nev. 1994); *In re Scrimpsher*, 17 B.R. 999, 1016-7 (Bankr. N.D.N.Y. 1982); *In re Littles,* 90 B.R. 669, 680 (Bankr. E.D. Pa. 1988), *aff'd as modified sub nom. Crossley v. Lieberman,* 90 B.R. 682 (E.D. Pa. 1988), *aff'd*, 868 F.2d 566 (3d Cir. 1989).

65.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized.  *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Qualls v. T-H Prof'l & Med. Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this Circuit, both before and after *Spokeo*, have rejected similar challenges to

standing in FDCPA cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS 139743 (C.D. Ill. 2016)); *Long v. Fenton & McGarvey Law Firm P.S.C.*, 223 F. Supp. 3d 773, 777 (S.D. Ind. Dec. 9, 2016) ("While courts have found that violations of other statutes . . . do not create concrete injuries in fact, violations of the FDCPA are distinguishable from these other statutes and have been repeatedly found to establish concrete injuries."); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS 81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress established 'an enforceable right to truthful information concerning' debt collection practices, a decision that 'was undoubtedly influenced by congressional awareness that the intentional provision of misinformation' related to such practices, 'contribute[s] to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,"); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13 (N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist. LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially when Congress has created a cause of action for its violation, by definition Congress has created a legally protected interest that it deems important enough for a lawsuit."); *Church v. Accretive Health, Inc.*, No. 15-15708, 2016 U.S. App. LEXIS 12414 *7-11 (11th Cir. July 6, 2016) (same); *see also Mogg v. Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5 (S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights, the invasion of which creates standing, even though no injury would exist without the statute," (quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this

12

reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

66. Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

67. 15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

68. 15 U.S.C. § 1692e(2)(a) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

69. 15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

70. 15 U.S.C. § 1692f generally prohibits "unfair or unconscionable means to collect or attempt to collect any debt."

71. 15 U.S.C. § 1692f(1) specifically prohibits "the collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

72. 15 U.S.C. § 1692g states:

a) Notice of debt; contents

Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless

13

the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

    (1) the amount of the debt;

73. The Seventh Circuit has held that a debt collector must clearly state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

74. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006).

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.")

75. The Seventh Circuit held in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), that "only the past due amount, the amount owed [to the debt collector], can be the 'amount of the debt' under § 809(a)(1)." *See also Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 947-48 (7th Cir. 2004) (stating the "current balance" without stating the actual

amount due is confusing, misleading, and unfair because the unsophisticated consumer "might pay the larger amount thinking she would be sued otherwise, even though the extra $ 200 might not yet be due, let alone overdue.").

### *The WCA*

76.     The Wisconsin Consumer Act ("WCA") was enacted to protect consumers against unfair, deceptive, and unconscionable business practices and to encourage development of fair and economically sound practices in consumer transactions. Wis. Stat. § 421.102(2).

77.     The Wisconsin Supreme Court has favorably cited authority finding that the WCA "goes further to protect consumer interests than any other such legislation in the country," and is "probably the most sweeping consumer credit legislation yet enacted in any state." *Kett* v. *Community Credit Plan, Inc.,* 228 Wis. 2d 1, 18 **n.**15, 596 N.W.2d 786 (1999) (citations omitted).

78.     To further these goals, the Act's protections must be "liberally construed and applied." Wis. Stat. § 421.102(1); *see also* § 425.301.

79.     "The basic purpose of the remedies set forth in Chapter 425, Stats., is to induce compliance with the WCA and thereby promote its underlying objectives." *First Wisconsin Nat'l Bank v. Nicolaou*, 113 Wis. 2d 524, 533, 335 N.W.2d 390 (1983). Thus, private actions under the WCA are designed to both benefit consumers whose rights have been violated and also competitors of the violators, whose competitive advantage should not be diminished because of their compliance with the law.

80.     To carry out this intent, the WCA provides Wisconsin consumers with an array of protections and legal remedies. The Act contains significant and sweeping restrictions on the activities of those attempting to collect debts. *See* Wis. Stats. § 427.104.

15

81. The Act limits the amounts and types of additional fees that may be charged to consumers in conjunction with transactions. Wis. Stats. § 422.202(1). The Act also provides injured consumers with causes of action for class-wide statutory and actual damages and injunctive remedies against defendants on behalf of all customers who suffer similar injuries. *See* Wis. Stats. §§ 426.110(1); § 426.110(4)(e). Finally, "a customer may not waive or agree to forego rights or benefits under [the Act]." Wis. Stat. § 421.106(1).

82. Consumers' WCA claims under Wis. Stat. § 427.104(1) are analyzed using the same methods as claims under the FDCPA. Indeed, the WCA itself requires that the court analyze the WCA "in accordance with the policies underlying a federal consumer credit protection act," including the FDCPA. Wis. Stat. § 421.102(1).

83. Further, the Wisconsin Supreme Court has held that WCA claims relating to debt collection are to be analyzed under the "unsophisticated consumer" standard. *Brunton v. Nuvell Credit Corp.*, 785 N.W.2d 302, 314-15. In *Brunton*, the Wisconsin Supreme Court explicitly adopted and followed the "unsophisticated consumer" standard, citing and discussing *Gammon v. GC Servs. Ltd. P'ship*, 27 F.3d 1254, 1257 (7th Cir. 1994). *Id.*

84. Wis. Stat. § 427.104(1)(g) states that a debt collector may not: "Communicate with the customer . . . in such a manner as can reasonably be expected to threaten or harass the customer."

85. Wis. Stat. § 427.104(1)(h) states that a debt collector may not: "Engage in other conduct which can reasonably be expected to threaten or harass the customer . . . ."

86. Wis. Stat. § 427.104(1)(j) states that a debt collector may not: "Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist."

16

87. Wis. Stat. § 427.104(1)(L) states that a debt collector may not: "Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt."

## COUNT I -- FDCPA

88. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

89. Exhibits C & D represent to the unsophisticated consumer that the balance of the account has been accelerated and attempt to resolve the balance of the account.

90. Exhibit E, an account statement that the original creditor mailed after Alltran mailed Exhibits C & D, states that the account had not yet been accelerated and Plaintiff could return her account to a current status by tendering a minimum payment.

91. Exhibits C & D are misleading and confusing as to the amount, character, and legal status of the debt Alltran sought to collect from Plaintiff and the legal status of the debt, and attempt to collect amounts that had not actually become due.

92. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, 1692f(1).

## COUNT II -- FDCPA

93. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

94. Exhibits C & D represent to the unsophisticated consumer that the account has been accelerated but also state that the account may be subject to late fees.

95. In fact, if the account had been accelerated, neither Alltran nor the creditor could impose late fees for failure to make monthly payments.

96. Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10), 1692f, and 1692f(1).

17

## COUNT III -- FDCPA

97.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

98.     Exhibit D contains misleading, confusing, and contradictory representations as to the settlement offer's payment schedule.

99.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), and 1692f.

## COUNT IV -- WCA

100.    Exhibits C & D represent to the unsophisticated consumer that the balance of the account has been accelerated and attempt to resolve the balance of the account.

101.    Exhibit E, an account statement that the original creditor mailed after Alltran mailed Exhibits C & D, states that the account had not yet been accelerated and Plaintiff could return her account to a current status by tendering a minimum payment.

102.    Exhibits C & D are misleading and confusing as to the amount, character, and legal status of the debt Alltran sought to collect from Plaintiff and the legal status of the debt, and attempt to collect amounts that had not actually become due.

103.    Defendant violated Wis. Stat. §§ 427.104(1)(g), 427.104(1)(h), 427.104(1)(j), and 427.104(1)(L).

## CLASS ALLEGATIONS

104.    Plaintiff brings this action on behalf of four classes:

105.    Class I ("Nationwide Accelerated Debt Class") consists of (a) all natural persons in the United States of America, (b) who were sent a series of collection letters in the form represented by Exhibits C & D to the complaint in this action, (c) where the consumer was subsequently mailed an account statement in the form of Exhibit E to the complaint in this action, (d) for an alleged debt incurred for personal, family, or household purposes, (e) where the

18

letter in the form of Exhibit D was mailed between October 30, 2017 and October 30, 2018, inclusive, (f) and neither of the letters was returned by the postal service.

106.     Class II ("Statewide Accelerated Debt Class") consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a series of collection letters in the form represented by Exhibits C & D to the complaint in this action, (c) where the consumer was subsequently mailed an account statement in the form of Exhibit E to the complaint in this action, (d) for an alleged debt incurred for personal, family, or household purposes, (e) where the letter in the form of Exhibit D was mailed between October 30, 2017 and October 30, 2018, inclusive, (f) and neither of the letters was returned by the postal service.

107.     Class III ("Nationwide Contradictory Settlement Offer Class") consists of (a) all natural persons in the United States of America, (b) who were sent a collection letter in the form represented by Exhibit D to the complaint in this action, (c) for an alleged debt incurred for personal, family, or household purposes, (d) where the letter in the form of Exhibit D was mailed between October 30, 2017 and October 30, 2018, inclusive, (e) and the letter was not returned by the postal service.

108.     Class IV ("Statewide Contradictory Settlement Offer Class") consists of (a) all natural persons in the State of Wisconsin, (b) who were sent a collection letter in the form represented by Exhibit D to the complaint in this action, (c) for an alleged debt incurred for personal, family, or household purposes, (d) where the letter in the form of Exhibit D was mailed between October 30, 2017 and October 30, 2018, inclusive, (e) and the letter was not returned by the postal service.

109.     Each class is so numerous that joinder is impracticable.  Upon information and belief, there are more than 50 members of each class.

110. There are questions of law and fact common to the members of each of the classes, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether Exhibits C & D violate the FDCPA and/or the WCA.

111. Plaintiff's claims are typical of the claims of their respective class members. All are based on the same factual and legal theories.

112. Plaintiff will fairly and adequately represent the interests of the members of each class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

113. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

114. Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and the Class and against Defendant for:

(a) actual damages;

(b) statutory damages;

(c) attorneys' fees, litigation expenses and costs of suit; and

(d) such other or further relief as the Court deems proper.

Dated: October 30, 2018

**ADEMI & O'REILLY, LLP**

By: /s/ Mark A. Eldridge
John D. Blythin (SBN 1046105)

20

Mark A. Eldridge (SBN 1089944)
Jesse Fruchter (SBN 1097673)
Ben J. Slatky (SBN 1106892)
3620 East Layton Avenue
Cudahy, WI 53110
(414) 482-8000
(414) 482-8001 (fax)
jblythin@ademilaw.com
meldridge@ademilaw.com
jfruchter@ademilaw.com
bslatky@ademilaw.com